IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| **JENNIFER ROSE STALLINGS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:14-cv-03273-MDH |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff's appeal of the Commissioner's denial of her application for supplemental security income (SSI) under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1385. Plaintiff has exhausted her administrative remedies and the matter is now ripe for judicial review.[1] The Court has carefully reviewed the record and finds the ALJ's opinion is supported by substantial evidence in the record as a whole. The decision of the Commission is **AFFIRMED**.

## BACKGROUND

Plaintiff was born in 1982 and underwent significant lumbar spinal surgery in her teen years in order to correct scoliosis and remove a spinal tumor.[2] After dropping out of high school in eleventh grade for reasons unrelated to health, Plaintiff worked as cashier, nurse's assistant,

---

[1] Plaintiff filed an application for SSI on December 17, 2010, claiming disability beginning December 20, 2008. Plaintiff's claim was initially denied on February 23, 2011. Plaintiff filed a written request for a hearing, which was held on May 7, 2012. The ALJ issued a decision on September 28, 2012, finding Plaintiff not disabled under the Act. The Appeals Counsel denied Plaintiff's request for a review of the ALJ's decision.

[2] Specifically, Plaintiff underwent a multi thoracolumbar fusion in 1996 for resection of a spinal tumor. Admin. Tr. 227. Following the surgery, she required no radiation or chemotherapy. Admin. Tr. 227. Dr. Clarke reports: "She underwent an extensive fusion of her dorsolumbar spine with extensive internal fixation done at St. Louis University Medical Center. This was done at age 14 and required two operations. She has a fusion from T3 through L4 with Harrington rods, and sublaminar wiring, and an accessory rod on the left lateral side from T11 through L4. She has an oblique takeoff at L5 . . . ." Admin. Tr. 271.

1

fast food worker, and home care attendant. She obtained her G.E.D. in 2008. Plaintiff left her most recent job in December of 2008, which is when she claims her disability began. Plaintiff filed an application for SSI two years later at age 28.

Plaintiff claims disability due to "scoliosis caused by tumor on spine." Her major complaint is sharp back and hip pain that radiates down her left leg roughly four or five times a day. Plaintiff states that her back pain is constant but it is worse when standing/walking. She reports that standing/walking causes her legs to go numb after roughly fifteen minutes. Plaintiff states that her back pain is also exacerbated by sitting for long periods of time. She reports having to change positions and either stand up or lay down to alleviate the pain. In addition to back and hip pain, Plaintiff states that she suffers from knee pain, a constantly swollen left leg, numbness in her left arm while lifting, depression, and anxiety.

According to Plaintiff, pain limits her ability to stand/walk, bend, lift more than ten pounds, wipe after using the restroom, and sleep. She takes pain medication but stated that the medication only reduces her pain from a "10" to a "7." Plaintiff testified that her boyfriend completes most of the household chores but she can occasionally use public transportation, shop for groceries, cook, fold laundry, and generally care for her own personal needs. Plaintiff testified that she spends roughly half of the day sitting and the other half of the day laying in bed or on the couch either watching movies, reading, using the computer, or talking on the phone.

Plaintiff's medical records reveal that Plaintiff has been diagnosed with obesity, depression, and back pain with sciatica. Radiological testing shows extensive reconstruction surgery throughout Plaintiff's thoracolumbar spine, including fusion hardware extending from T11-L4 and degenerative changes in the disk spaces below the fusion at L4-L5 and L5-S1. Physician observations indicate that Plaintiff walks with an antalgic gait, sometimes displays a

decreased range of motion in her lumbar back, and sometimes presents with a slightly swollen left leg that has normal strength. On one occasion, Plaintiff exhibited a decreased range of motion in her left knee due to pain. Other than noted above, Plaintiff's medical records generally indicate that Plaintiff presents as normal.

## ALJ's Decision

The ALJ found that Plaintiff suffers from severe impairments including a history of scoliosis, status post placement of Harrington rod and fusion, degenerative disc disease of the lumbar spine, morbid obesity, and depression. He determined that Plaintiff's impairments do not amount to an impairment or combination of impairments that meets the severity of one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ assessed that Plaintiff retains the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(c), except that Plaintiff: "can lift and carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk 2 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; push/pull some weights; must alternate sitting and standing every 30 minutes; no climbing ladders, ropes, or scaffolds; occasional climbing ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; must avoid concentrated exposure to hazards such as unprotected heights and dangerous moving machinery; and can perform simple, routine, repetitive tasks." The ALJ found that Plaintiff's impairments do not preclude her from performing work that exists in significant numbers in the national economy, including work as a charge account clerk, food order clerk, or document preparer. Based on these findings, the ALJ concluded that Plaintiff is not disabled under section 1614(a)(3)(A) of the Act.

## STANDARD

"Judicial review of the Commissioner's decision is limited to ascertaining whether substantial evidence in the record as a whole supports the Commissioner's findings." *Freeman v. Apfel*, 208 F.3d 687, 690 (8th Cir. 2000). Substantial evidence is less than a preponderance of the evidence and requires enough evidence to allow a reasonable person to find adequate support for the Commissioner's conclusion. *See id.* This standard requires a court to consider both the evidence that supports the Commissioner's decision and the evidence that detracts from it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). That the reviewing court would come to a different conclusion is not a sufficient basis for reversal. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Id.* (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

## DISCUSSION

In order to qualify for benefits under the Social Security Act and accompanying regulations, a claimant must prove that she is disabled. *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). Disability is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Social Security Administration has established a five-step process for determining whether an individual is disabled. *See id.* at § 416.920(a). The five-step process considers whether: "(1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if

4

Case 6:14-cv-03273-MDH   Document 17   Filed 04/20/15   Page 4 of 12

not, (5) whether she could perform any other kind of work." *Halverson*, 600 F.3d at 929. If the ALJ determines at step three the claimant's impairments do not meet or equal one of the listed impairments, then the ALJ must assess the claimant's residual functional capacity ("RFC") prior to proceeding to step four. 20 C.F.R. § 416.920(e). RFC is defined as the most that a claimant can still do despite his or her limitations. *Id.* at § 416.945(a)(1). A claimant's RFC is determined by the ALJ "based on all of the relevant medical and other evidence." *Id.* at § 416.945(a)(3).

In the present case, all three of Plaintiff's arguments surround the ALJ's determination of Plaintiff's RFC. First, Plaintiff argues the ALJ failed to sufficiently develop the record in order to properly determine Plaintiff's RFC. Second, Plaintiff claims the ALJ erred when, in assessing the RFC, he found Plaintiff not fully credible regarding the extent of her reported limitations. Third, Plaintiff argues the ALJ's RFC and associated hypothetical question were unsupported by substantial evidence.

### 1. The ALJ had sufficient evidence to render an RFC.

Plaintiff first argues that, in determining Plaintiff's RFC, the ALJ should have ordered a consultative examination or re-contacted a physician regarding Plaintiff's physical limitations. Plaintiff claims "the ALJ is not qualified to concoct the physical RFC based upon the raw medical data."

"It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001)). It is the claimant's burden to provide evidence regarding his or her RFC. 20 C.F.R. § 416.945(a)(3); *see also*

5

*Mayfield v. Astrue*, No. 11-3412-CV-S-REL-SSA, 2012 WL 5904331, at *19 (W.D. Mo. Nov. 26, 2012); *Peterson v. Colvin*, No. 13-0329-CV-W-ODS, 2013 WL 6237868, at *4 (W.D. Mo. Dec. 3, 2013). Only if the evidence presented is considered "insufficient or inconsistent" is the ALJ required to take additional action to re-contact a physician or arrange a consultative examination. *See id.* at § 416.920b; *see also Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011); *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010); *Johnson v. Astrue*, 627 F.3d 316, 319-20 (8th Cir. 2010).

Eighth Circuit case law reveals that an ALJ can appropriately determine a claimant's RFC without a specific medical opinion so long as there is sufficient medical evidence in the record. *See Tellez v. Barnhart*, 403 F.3d 953, 956-57 (8th Cir. 2005) ("Tellez contends that the ALJ did not 'fully and fairly develop the record' concerning her limitations and that if the 'ALJ did not believe that the professional opinions available ... were sufficient to allow him to form an opinion, he should have further developed the record.' However, there is no indication that the ALJ felt unable to make the assessment he did and his conclusion is supported by substantial evidence."); *Mayfield v. Astrue*, No. 11-3412-CV-S-REL-SSA, 2012 WL 5904331, at *19 (W.D. Mo. Nov. 26, 2012) ("In assessing plaintiff's residual functional capacity, the ALJ was not required to rely entirely on any particular physician's opinion, and the ALJ's decision is not defective simply because there was no opinion evidence from a treating or examining physician regarding plaintiff's residual functional capacity.").

Therefore, it is clear that the ALJ in this case did not err in fashioning Plaintiff's RFC. The ALJ considered medical records, observations of treating physicians, and Plaintiff's own description of her limitations. The ALJ cited Plaintiff's disability report, functional report, and hearing testimony, as well as medical records from April 2010, May 2010, June 2011, August

6

2011, September 2011, November 2011, March 2012, and April 2012. He highlighted Dr. Clarke's opinion that Plaintiff is likely unable to perform any work that stresses the spine.[3] He further made credibility assessments regarding Plaintiff's reported physical limitations. There is no indication that the ALJ felt unable to make the assessment that he did and his RFC is supported by substantial evidence, as discussed below. Accordingly, Plaintiff's argument that the ALJ failed to adequately develop the record is rejected.[4]

### 2. The ALJ's credibility determination was supported by substantial evidence.

Plaintiff next argues the ALJ erred when he found Plaintiff not fully credible regarding her reported limitations. The ALJ stated:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable physical impairments could reasonably be expected to produce some of the alleged symptoms but the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms is not fully credible to the extent they are inconsistent with the residual functional capacity assessment. However, there is sufficient nexus between the objective medical evidence of his conditions that could reasonable cause some of the pain and limitations that he has alleged.

---

[3] Contrary to Plaintiff's assertion, the ALJ did not "reject" Dr. Clarke's opinion. The ALJ merely noted that Dr. Clarke's opinion was performed in the context of Medicaid entitlement and that such opinions by or for another governmental agency are not binding on the Social Security Administration. Plaintiff did not explain how the determined RFC is inconsistent with Dr. Clark's report or requires Plaintiff to perform work that "stresses the spine." Moreover, even assuming the ALJ did reject Dr. Clarke's opinion, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).

[4] *See, e.g., Mayfield v. Astrue*, No. 11-3412-CV-S-REL-SSA, 2012 WL 5904331, at *19 (W.D. Mo. Nov. 26, 2012) (holding ALJ had sufficient evidence in record to determine RFC even though record contained no direct opinion from a physician regarding plaintiff's limitations). Plaintiff attempts to distinguish *Mayfield* by arguing, "This was not a case where Plaintiff only had minimal examination findings, it is a case where the severity of her findings should not allow an ALJ to rely on the raw medical evidence." The Court does not follow this argument. Moreover, in determining RFC, an ALJ is permitted to directly examine medical evaluations to determine whether such evaluations provide evidence about functional limitation even where the reports do not explicitly state how such limitations affect the workplace. *See, e.g., Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007) (holding medical examination reports provided sufficient medical evidence to determine RFC because the evaluations described the claimant's functional limitations with sufficiently generalized clarity to allow for an understanding of how those limitations function in a work environment). Here, the ALJ cited medical findings of various physicians that concern Plaintiff's functional capacity; contrary to Plaintiff's assertion, this did not require the ALJ to make his own independent medical findings or act as a doctor.

Admin. Tr. 24. Plaintiff argues the ALJ's credibility determination is unsupported by substantial evidence because the ALJ did not assess the required factors, because the connection between the reported limitations and the medical evidence was not weak, and because Plaintiff's reported limitations remained consistent throughout the record.

Once the ALJ finds a medical impairment that could reasonably be expected to produce the claimant's pain or other symptoms alleged, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [the claimant's] symptoms limit [her] capacity for work." 20 C.F.R. § 416.929(b)-(c). To evaluate the intensity and persistence of a claimant's symptoms, the ALJ should consider the objective medical evidence along with other factors such as the claimant's work record, claimant and third-party reports regarding the claimant's daily activities, pain, precipitating and aggravating factors, medication, and functional restrictions, and non-medical treatments and measures taken to relieve symptoms. *See id.* at § 416.929(c). The ALJ need not explicitly discuss each of these factors but must adequately explain his credibility findings. *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008).

Because "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," 20 C.F.R. § 416.929(c)(3), the ALJ "may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Rather, the ALJ may disbelieve subjective complaints regarding intensity and persistence of pain where there are inconsistencies in the evidence as a whole, considering the factors cited above. *Id.* Credibility determinations are primarily for the Commissioner and courts will "defer to the ALJ's credibility finding if the ALJ 'explicitly discredits a claimant's testimony and gives a good

8

reason for doing so.'" *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (quoting *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010)).

Here, the ALJ made an express finding that Plaintiff's statements concerning intensity, persistence, and limiting effects of her symptoms were not fully credible. The ALJ detailed Plaintiff's statements regarding the extent of her symptoms and limitations. He then highlighted medical records that he believed were inconsistent with the severity of back and leg pain reported by Plaintiff and called into question the extent of Plaintiff's limitations due to mental impairments.[5] He noted that Plaintiff was prescribed a conservative course of treatment in managing her back pain and musculoskeletal impairments.[6] The ALJ further noted that Plaintiff failed to take certain measures to alleviate her symptoms[7] and he emphasized that Plaintiff never reported certain alleged symptoms to medical providers.[8] He also found that "the claimant's

---

[5] For example, the ALJ pointed to: (1) Dr. Strang's report in April 2010 that Plaintiff presented with back and hip pain but denied leg pain and exhibited normal strength and range of motion; (2) X-ray reports in April 2010 showing "moderate" disk space narrowing in lumbar spine; (3) E.R. notes from May 2010 showing Plaintiff claimed left leg numbness but tested negative for weakness and her physical exam revealed grossly normal extremities except swelling in left leg; (4) x-rays in September 2011 showing "mild" thoracic spondylosis, "marked" degenerative disc disease at L4-5 with "mild" changes at L5-S1, and "moderate to marked" lower lumbar facet joint arthrosis; (5) Dr. Villareul-Kirk's notes in March and April 2012 that Plaintiff had normal examinations of musculoskeletal and extremities with the exception of noted knee pain; (6) Dr. Power's diagnostic assessment that diagnosed Plaintiff with major depressive disorder and a history of cannabis abuse with a GAF score of 58 indicating "moderate" symptoms; and (7) Dr. Power's examination notes that Plaintiff had pleasant affect, congruent mood, good eye contact, productive and coherent thought process, and normal speech.

[6] An ALJ may consider conservative treatment to weigh against a claimant's credibility. *See, e.g., Moore v. Astrue*, 572 F.3d 520, 525 (8th Cir. 2009); *Priest v. Apfel*, 109 F. Supp. 2d 1102, 1113 (E.D. Mo. 2000) *aff'd*, 12 F. App'x 445 (8th Cir. 2001). Here, the ALJ noted that Plaintiff has been followed and treated by Dr. Villaruel-Kirk, who has continued to treat Plaintiff conservatively with medications and has not required aggressive medical treatment, frequent hospital confinement, or surgical intervention as a result of her musculoskeletal impairments.

[7] The ALJ noted that: (1) Plaintiff underwent a diagnostic lumbar medial branch block in August 2011, was noted ambulating in her normal fashion as she left the office, she was directed to return for an additional block in two weeks if needed, and she never returned; and (2) Plaintiff received treatment for her mental impairments until age 19 and then waited ten years to seek additional treatment until November 2011.

[8] For example, the ALJ noted that Plaintiff claims drowsiness and impaired thinking from the use of medications yet the medical records fail to note such symptoms; the ALJ concluded that "the lack of frequent complaints to a treating provider suggests that the side effects are mild, and would not interfere with the claimant's ability to perform work activities in any significant manner."

9

work record draws into question the claimant's motivation to work and her credibility as a witness." Furthermore, the ALJ acknowledged that Plaintiff's daily activities "are fairly limited" but concluded that Plaintiff's self-reported daily activities fail to provide strong evidence of disability because they were not objectively verified and "it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision."

The decision of the ALJ clearly shows that the ALJ considered the appropriate factors in evaluating Plaintiff's credibility regarding the intensity and persistence of her symptoms. The factors assessed by the ALJ show inconsistencies in the record as a whole such that the ALJ did not err in disregarding certain of Plaintiff's subjective complaints. Accordingly, the Court finds the ALJ's credibility determination is supported by substantial evidence. *See Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination."); *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (where substantial evidence would support both the ALJ's conclusion that claimant is not credible and the claimant's assertion to the contrary, the court should find no error because the ALJ – who was able to observe the claimant during his hearing – is in a better position to make such determinations).

### 3. The ALJ's RFC and hypothetical question were supported by substantial evidence.

Finally, Plaintiff argues the ALJ's Step Five determination is unsupported by substantial evidence because the ALJ's allegedly erroneous credibility assessment rendered his RFC and hypothetical question incomplete. The Court notes that a hypothetical question posed to a vocational expert "need only include impairments that the ALJ finds credible." *Smith v. Colvin*, 756 F.3d 621, 627 (8th Cir. 2014). Here, the ALJ's hypothetical question included only those

impairments that he found credible; as discussed above, the ALJ's credibility assessment was not unsupported by substantial evidence.

Furthermore, the ALJ's final RFC determination is supported by substantial evidence. The ALJ found Plaintiff could perform no more than a limited range of sedentary work, which itself reflects significant limitation. Such a finding is consistent with Plaintiff's medical records that show degeneration in Plaintiff's lumbar spine and diagnose Plaintiff with back pain accompanied by sciatica. The ALJ further included specific limitations in Plaintiff's RFC that largely reflect Plaintiff's self-reported symptoms and limitations,[9] except to the extent that the ALJ found those symptoms and limitations non-credible.[10] *See Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005) ("The ALJ must first evaluate the claimant's credibility before determining a claimant's RFC."). The Court finds the ALJ's RFC determination supported by substantial

---

[9]

| Complaint by Plaintiff | Limitation in RFC |
|---|---|
| Pain in back, hips, legs increased when standing for more than 15-20 minutes; legs go numb | "stand and/or walk 2 hours in an 8-hour workday"; "must alternate sitting and standing every 30 minutes" |
| Pain in back, hips increased when sitting for extended periods of time; must reposition | "sit 6 hours in an 8-hour workday"; "must alternate sitting and standing every 30 minutes" |
| Cannot lift more than ten pounds due to pain in back and numbness in left arm | "she can lift and carry 10 pounds occasionally and less than 10 pounds frequently" |
| Pain in back and knees when bending, squatting, kneeling | "occasional balancing, stooping, kneeling, crouching, and crawling" |
| Difficulty climbing stairs | "no climbing ladders, ropes, or scaffolds; occasional climbing ramps and stairs" |

[10] *See* discussion *supra* at Part 2. The Court's independent review also showed:

| Complaint not addressed by RFC | Inconsistency |
|---|---|
| Pain in back and knees when bending, squatting, kneeling (EXTENT) | Medical reports sometimes show limited ROM in back and sometimes do not; only one or two complaints to medical provider of knee pain and only one instance of limited ROM due to pain (most of time, evaluation of extremities reported normal) |
| Swollen left leg | Medical reports show not always swollen, size of swelling exaggerated, no blood clot, and strength/ROM normal; inconsistency noted by ALJ at hrg. |
| Concentration problems | Can read book for at least an hour; able to concentrate at hearing; no medical report of concentration problems |
| Depression/Anxiety | Initially failed to mention; ten year delay in seeking treatment; stated has not affected work in past |

11

evidence in the record as a whole and therefore the hypothetical question posed by the ALJ at Step Five was not incomplete or erroneous.

## CONCLUSION

For the reasons set forth herein, there is substantial evidence on the record as a whole to support the ALJ's disability determination. Accordingly, the Commissioner's denial of benefits is hereby **AFFIRMED**.

**IT IS SO ORDERED**.

Dated: April 20, 2015

                                       */s/ Douglas Harpool*
                                       **DOUGLAS HARPOOL**
                                       **UNITED STATES DISTRICT JUDGE**